**19SL-CC05387**

Electronically Filed - St Louis County - November 21, 2019 - 02:14 PM

IN THE CIRCUIT COURT OF THE COUNTY OF ST. LOUIS
STATE OF MISSOURI

| | | |
|---|---|---|
| CRYSTAL RAY MILTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Cause No.: |
| v. | ) | |
| | ) | Division: |
| COLONEL JON M. BELMAR, | ) | |
| in his official capacity as | ) | |
| final policymaker only, | ) | |
| | ) | |
| Serve:   Chief Jon Belmar | ) | |
| St. Louis County Police | ) | |
| Division of Patrol | ) | |
| 7900 Forsyth Blvd, Room B148 | ) | |
| St. Louis, MO  63105 | ) | |
| | ) | |
| OFFICER JOHN WOLF, | ) | |
| in his individual capacity only, | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Serve:   Officer John Wolf, | ) | |
| St. Louis County Police | ) | |
| Division of Patrol | ) | |
| 7900 Forsyth Blvd, Room B148 | ) | |
| St. Louis, MO  63105 | ) | |
| | ) | |
| Defendant. | ) | |

**PETITION FOR DAMAGES UNDER 42 U.S.C. 1983
EXCESSIVE FORCE, FAILURE TO TRAIN**

Plaintiff Crystal Ray Milton, by counsel W. Bevis Schock and Hugh A. Eastwood, states

for her Petition for Damages under 42 U.S.C. § 1983:

1.  Crystal Milton was asleep under a grill cover within the "three-season room" of an

uninhabited house.  County Officer John Wolf, his K-9 "Kelso", and other officers

searched the rest of the house.  Without shouting a warning, they opened a door into, and

entered, the three-season room.  Kelso ran to Milton.  Milton awoke to the dog biting her

face.  Milton wedged her arm into the dog's mouth, and the dog bit and fractured her

Electronically Filed - St Louis County - November 21, 2019 - 02:14 PM

hand.  The County failed to train officers to issue warnings before entering an enclosed area where a suspect might be.

## PARTIES

2.  Plaintiff Crystal Ray Milton is an individual residing in the State of Missouri.

3.  Defendant Officer John Wolf (DSN 4066) is a licensed police officer of St. Louis County.  Milton sues Officer Wolf in his individual capacity only.

4.  Defendant Colonel Jon M. Belmar is the Chief of Police for the St. Louis County Police. Milton sues Chief Belmar only in his official capacity as final policymaker.

5.  St. Louis County is a properly formed and functioning charter county in the State of Missouri.

## JURISDICTION

6.  Milton brings this civil rights action pursuant to 42 U.S.C. §1983 and §1988 and the Fourth and Fourteenth Amendments to the United States Constitution.

7.  This Court has concurrent jurisdiction with federal district courts over federal civil rights claims.[1]

## VENUE

8.  The events complained of occurred in St. Louis County, Missouri.

## COLOR OF STATE LAW

9.  At all relevant times Officer Wolf acted under color of state law.  Particularly, at all relevant times Officer Wolf acted under color of the laws, statutes, ordinances, regulations, policies, customs and usages of the State of Missouri, and its political subdivisions.

---

[1] *See Felder v. Casey,* 487 U.S. 131, 139 (1988).

Electronically Filed - St Louis County - November 21, 2019 - 02:14 PM

## JURY DEMAND

10.    Plaintiff demands jury trial.

## FACTS

11.    On the wet and cold evening of March 23, 2019, Milton entered the rear, screened-in

three-season room of a house in unincorporated south St. Louis County.

12.    The house was for sale and was uninhabited, empty of both people and furnishings.

13.    The house faces east, and the three-season room where Milton was located is at the rear

of the dwelling, west side of the house, toward the southern end of a raised deck area.

14.    Milton found a BBQ grill cover.

15.    Milton covered herself with the grill cover and lay down along the north low wall of the

three-season room.

16.    Milton went to sleep.

17.    The police report states at p. 9 of 22 that through a private security camera system the

police had been alerted to the fact that an unauthorized person was trespassing at the

house.

18.    Officer Wolf, his K-9, "Kelso", and other officers responded to the house.

19.    Officer Wolf stated in the police report, p. 11 of 22, that he looked into the three-season

room from the north side and saw:

     a.    A nylon tool bag, unzipped, in which he could "plainly see that the bag contained

        various tools",

     b.    On the floor of the screened in three-season room a silver metal pry bar and debris

        from an attempted entry,

3

Electronically Filed - St Louis County - November 21, 2019 - 02:14 PM

     c.     A window screen which had been popped out and was leaning against the wall of the house itself, and

     d.     Wet shoe prints.

20.    The police report states at p. 10 of 22 that there were no lights on in the house.

21.    The police report states at p. 12 of 22, in reference to the three-season room, "Due to the darkness, nothing could be observed in that area."

22.    The three-season room was dark without any illumination such as artificial light.

23.    There were no lights on in the three-season room, as stated in the police report at p. 10 of 22 where the report describes "low light" in the area of the three-season room, by which the report on inference means ambient illumination from street lights.

24.    It would have been objectively impossible for Officer Wolf to have seen any object in the three-season room.

25.    Due to her position sleeping up against the wall on the room's floor, Officer Wolf would not have had a view of Milton's location.

26.    Officer Wolf, Kelso, and other officers, went around to the front door.

27.    Officer Wolf, Kelso, and other officers, entered and searched interior rooms within the house.

28.    They found no one.

29.    Officer Tripp, who was part of the search party, opened a door and entered the screened-in three-season room.

30.    At least Officer Tripp, by the report's admission at p. 13 of 22, just walked out onto the three-season room without tactical protection.

Electronically Filed - St Louis County - November 21, 2019 - 02:14 PM

31. The police report at p 13 of 22 asserts that Officer Tripp "became startled" by what he thought was a person under the grill cover and shouted "Police, show me your hands," and received no response.

32. Officer Tripp made no such statement because if he had Milton would have awakened.

33. The report states at p. 13 of 22 that Officer Tripp went back inside the house.

34. Officer Wolf and the dog exited the back door of the house and entered the screened-in three-season room.

35. On inference, Officer Wolf, the dog, and Officer Tripp, just walked out onto the three-season room as a group without tactical protection, and Officer Tripp never came out alone at the beginning.

36. The police report at p 14 of 22 claims Officer Wolf did shout a warning.

37. If Officer Wolf had issued such a warning before entering the three-season room, then Milton would have awakened.

38. Since Officer Wolf and his fellow officers had found no one in the rest of the house, and were searching based on a report of a trespasser, then Officer Wolf had objectively reasonable suspicion that someone was in the three-season room.

39. While Milton denies that Officer Wolf saw a bag and individual items in the three-season room, even if he had seen such items, then a reasonable officer would have made the inference that a person was in the three-season room.

40. As Officer Wolf entered the three-season room, a reasonable officer in his position would have had an objective belief that it was possible someone was present within the screened-in three-season room.

Electronically Filed - St Louis County - November 21, 2019 - 02:14 PM

41.  As Officer Wolf entered the three-season room with Kelso still performing a search, he had an absolute duty under law and under St. Louis County Police Policies and Procedures to shout a warning about the K-9.

42.  Officer Wolf did not shout a warning about the K-9.

43.  In failing to shout a warning about the K-9, Officer Wolf was plainly incompetent, knowingly violated the law, and was reckless.

44.  Officer Wolf was then less than ten feet from where Milton was sleeping.

45.  Warnings are intended to increase the likelihood that a suspect will surrender.

46.  If Officer Wolf had shouted a warning, then Milton would have awakened and surrendered.

47.  At that time Milton was not resisting arrest in any way.

48.  The police report at p. 14-15 of 22 states that Officer Dumstroff stated that Milton had a knife and hammer in her hands.

49.  Milton did not have a knife or hammer, or any other weapon of any kind in her hands.

50.  When the officers and Kelso exited the house into the three-season room Milton was asleep, and therefore Milton was then neither actively hiding from the officers nor actively resisting or fleeing.

51.  Kelso attacked Milton by biting Milton's face with his teeth around her cheeks.

52.  Milton awoke because the dog was biting her face.

53.  Milton was afraid for her life because the dog's bite was near her throat.

54.  At the moment when Kelso bit Milton's face, Milton was seized.

55.  From the first moment Kelso bit Milton's face until Kelso released his bite from her face, Kelso continuously caused severe injuries to Milton's face.

Electronically Filed - St Louis County - November 21, 2019 - 02:14 PM

56.   It was dark and even if Milton had had a knife or hammer, the items could not have been seen by Officer Dumstroff, Officer Tripp, Officer Wolf, or anyone else.

57.   Officer Wolf claims in his police report at p. 15 of 22 that he did not immediately call off Kelso because Milton had a knife and hammer within her reach.

58.   Milton wedged her arm between Kelso's jaws and her face.

59.   Kelso then transferred his bite to Milton's wrist and lower thumb area.

60.   Kelso's bite caused severe injuries to the flesh of Milton's arm and hand.

61.   Kelso's bite fractured Milton's left first metacarpal, the first bone from the wrist.

62.   Only after the lapse of at least 45 seconds, the amount of time stated in the police report, although it may have been more, did Officer Wolf call off Kelso.

63.   After Officer Wolf called off Kelso, he handcuffed Milton on the area of her arm where he could see she had been bitten and where her arm was fractured.

64.   The handcuffing caused intense pain to Milton and, on inference, additional arm injuries.

65.   Officer Wolf did not follow County policy on the deployment of canines, particularly General Order 15-43 (Police Canine), as revised dated September 16, 2015, because he Officer Wolf did not follow the policy at Section IV.D.3, in that he did not issue a verbal warning or announcement before the building search.

66.   Chief Belmar as final policymaker did not adequately train Officer Wolf to issue a sufficient warning before using a K-9 to search an area of a house where there was reasonable suspicion that a suspect is located.

67.   Under the circumstances here, whether there was a report of a trespasser and no suspect had been found elsewhere in the house, Officer Wolf should have shouted a sufficient warning before Kelso entered the three-season room.

Electronically Filed - St Louis County - November 21, 2019 - 02:14 PM

68.   Chief Belmar's failure to train for those circumstances was unreasonable.

69.   This failure to train was the moving force for Milton's damages.

## DAMAGES

70.   Milton suffered:

   a.   Severe injuries to her face,

   b.   Scarring to both sides of her face,

   c.   Permanent numbness on the left side of her mouth,

   d.   Bite to wrist and hand,

   e.   Fracture of left first metacarpal,

   f.   Lack of strength in left thumb,

   g.   During the incident fear for her life, and

   h.   Garden variety emotional distress including terror, stress, fear, anxiety, humiliation, and embarrassment,

71.   Milton incurred medical bills for the initial injury and the physical therapy, actually paid and total incurred, which are unknown as of this filing but will be specifically determinable through discovery.

72.   Milton will have future medical bills for plastic surgery and perhaps repair to her left first metacarpal.

## Permanent Physical Injuries

73.   Based on present knowledge Milton believes the following physical injuries will never wholly heal and are thus permanent:

   a.   Scarring to both sides of her face,

   b.   Numbness on the left side of her mouth,

8

Electronically Filed - St Louis County - November 21, 2019 - 02:14 PM

c.      Scarring to her left hand, and

d.      Lack of strength in her left thumb.

## PROXIMATE CAUSE

74.   Officer Wolf's conduct proximately caused Milton's damages.

75.   St. Louis County's failure to train as stated above caused Milton's damages.

## NO QUALIFIED IMMUNITY FOR OFFICER WOLF

76.   It is clearly established that a plaintiff's failure to hear a warning creates a triable issue of

fact as to whether the officer properly gave one.[2]

77.   A reasonable jury could infer that no warning was given from the fact that Milton did not

hear a warning,[3] and from the fact that the police report is internally contradictory and

therefore false.

78.   An officer is required to give an adequate warning before using his police dog in a search

in which the dog is expected to bite and hold.[4]

---

[2] *Collins v. Schmidt*, 326 F. Supp. 3d 733, 744–45 (D. Minn. 2018).
[3] *Kruse v. Jackson*, No. 05-2123, 2006 WL 3758204, at *5-6 (D. Minn. Dec. 20, 2006)
[4] *Szabla v. City of Brooklyn Park, Minnesota*, 486 F.3d 385, 392 (8th Cir. *en banc* 2007), and see *McAllister v. Dean*, No. 4:13-CV-2492 CEJ, 2015 WL 4647913, at *8 (E.D. Mo. Aug. 5, 2015): There exists no *per se* rule that deployment of a police canine is unreasonable unless preceded by a warning." *Grady v. Becker*, 907 F.Supp.2d 975, 980 (D.Minn.2012) (*quoting Kuha v. City of Minnetonka*, 365 F.3d 598, 599 (8th Cir.2013) abrogated on other grounds by *Szabla v. City of Brooklyn Park*, 486 F.3d 385 (8th Cir.2007)) (*en banc* ) ("[T]here may be exceptional cases where [a canine] warning is not feasible."). "That said, the *general* rule is that absent a threat to his safety, a police officer must warn a suspect before releasing a dog upon him." *Id* . (emphasis in original). *See also Kuha* at 598, 599, *(*a jury could properly find it objectively unreasonable to use a police dog trained in the bite and hold method without first giving the suspect a warning and opportunity for peaceful surrender). (The presence or absence of a warning is a critical fact in virtually every excessive force case involving a police dog.), cited favorably in *Musolf v. Ellis*, No. CIV 07-4764 JRT/JJK, 2009 WL 2171005, at *3 (D. Minn. July 17, 2009).

Electronically Filed - St Louis County - November 21, 2019 - 02:14 PM

79. The conduct of Officer Wolf was not based on only mistaken but objectively reasonable beliefs and he is not entitled to qualified immunity.[5]

80. There was no conflicting information that could not be immediately resolved.[6]

81. Officer Wolf's deployment of Kelso into the three-season room without an adequate warning was plainly incompetent and/or knowingly violated the law.[7]

82. Officer Wolf's recklessness disqualifies him from invoking the affirmative defense of qualified immunity.[8]

83. Milton's constitutional rights at issue in her claim for excessive force, for a bite by a police K-9 absent a warning, were clearly established before the date of the incident.

84. These particular events are sufficiently similar to other cases that Officer Wolf had notice that his conduct was unconstitutional, or his conduct was so egregious or obvious that a prior factually on point decision is unnecessary to make illegality clear.[9]

85. St. Louis County, as a government entity, is not entitled to qualified immunity.

### ATTORNEY'S FEES AND COSTS - 42 U.S.C. 1988

86. In pursuit of her federal civil rights claims, Milton is incurring reasonable attorney's fees and costs, including taxable and non-taxable costs.[10]

87. Milton seeks her reasonable attorney's fees and costs under 42 U.S.C. 1988 for the pursuit of those claims.

### COUNT I – AGAINST OFFICER WOLF
### FOURTH AMENDMENT - EXCESSIVE FORCE – CANINE BITE

---

[5] *Dowell v. Lincoln County*, 762 F.3d 770, 777 (8th Cir. 2014).
[6] *Borgman v. Kedley*, 646 F.3d 518, 522 (8th Cir. 2011).
[7] *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015).
[8] *Coggins v. Buonora*, 776 F.3d 108, 114 (2d Cir. 2015).
[9] *Hope v. Pelzer*, 536 U.S. 730 (2002) and *U.S. v. Lanier*, 520 U.S. 259 (1997).
[10] 42 U.S.C. 1988; *Lefemine v. Wideman*, 568 U.S. 1 (2012).

Electronically Filed - St Louis County - November 21, 2019 - 02:14 PM

88.   Milton incorporates all prior paragraphs.

89.   Under the totality of the circumstances and as seen from the perspective of a reasonable officer on the scene, the manner in which Officer Wolf used Kelso was excessive force under the constitution.

90.   Officer Wolf knew that the injuries posed by a potential bite would be an extremely severe intrusion on the body of any person present within the three-season room.[11]

91.   At the time Officer Wolf released Kelso within the three-season room:

    a.   He knew that someone might be on the three-season room,

    b.   There were no exigent circumstances allowing omission of the safeguard of a warning,

92.   Under these circumstances the use of a police K-9 without voicing a warning was excessive force.

93.   The use of excessive force violated Milton's well established Fourth Amendment constitutional right to be free of unreasonable force.[12]

**Punitive Damages**

94.   The actions of Officer Wolf were:

    a.   Malicious or recklessly indifferent to Milton's constitutional rights, and

    b.   Taken in the face of a perceived risk that they would violate federal law.

**Prayer**

WHEREFORE, Plaintiff Crystal Ray Milton prays for judgment for compensatory damages and for punitive damages under 42 U.S.C. § 1983 against Defendant Officer John Wolf

---

[11] *Scott v. Harris*, 550 U.S. 372, 383 (2007)
[12] *Graham v. Connor*, 490 U.S. 386 (1989).

Electronically Filed - St Louis County - November 21, 2019 - 02:14 PM

for excessive force, for costs including attorney's fees and taxable and non-taxable costs under

42 U.S.C. § 1988, and for such other relief as the court finds to be just, meet and reasonable.

**COUNT II – AGAINST CHIEF JON BELMAR**
*MONELL* **- FAILURE TO ADEQUATELY TRAIN**
**TO SUFFICIENTLY WARN OF K-9**

95.   Milton incorporates all prior paragraphs.

96.   Chief Belmar is the final policymaker for the St. Louis County Police, including training

policies for officer use of K-9s.

97.   Officer Wolf was trained on the use of a K-9 to search and seize using a "bite and hold"

technique.

98.   Officer Wolf was not adequately trained to issue a sufficient verbal warning before using

a K-9 to search an area of a residence where there was reasonable suspicion that a suspect

may be located.

99.   Chief Belmar's failure to adequately train Officer Wolf was the moving force behind

Milton's damages.[13]

**Prayer**

---

[13] *Chew v. Gates*, 27 F.3d 1432, 1445–46 (9th Cir. 1994) ("Finally, as noted earlier, on remand Chew is not limited to pursuing any single theory underlying our decision that summary judgment was improper. The district court's grant of summary judgment for the city was based on the conclusion that Officer Bunch's decision to release Volker was reasonable. However, municipal liability need not be predicated on an "unreasonable" action on Officer Bunch's part. A jury could conceivably decide, for example, that although the officer's on-the-scene decision to use canine force was reasonable under the circumstances, the city was nevertheless at fault for providing its officers with dogs trained to bite and seize all concealed suspects regardless of their efforts to surrender. If the plaintiff could prove at trial that training in less dangerous means of detection and apprehension was both feasible and effective from a law enforcement standpoint (and the city's recent adoption of a "find and bark" policy suggests that it may well have been), then the city's failure so to train its dogs may well have constituted an unreasonable municipal action regarding the use of force.").

Electronically Filed - St Louis County - November 21, 2019 - 02:14 PM

WHEREFORE, Plaintiff Crystal Ray Milton prays for judgment for compensatory damages under 42 U.S.C. § 1983 against Defendant Colonel Jon M. Belmar in his official capacity as final policymaker for Failure to Train, for costs including attorney's fees and taxable and non-taxable costs under 42 U.S.C. § 1988, and for such other relief as the court finds to be just, meet and reasonable.

Respectfully submitted,
Co-Counsel for Plaintiff

  /s/ W. Bevis Schock  .
W. Bevis Schock, MBE # 32551
Attorney at Law
7777 Bonhomme Ave., Ste. 1300
St. Louis, MO  63105
wbschock@schocklaw.com
Fax:    314-721-1698
Voice: 314-726-2322

  /s/ Hugh A. Eastwood  .
Hugh A. Eastwood, MBE # 62058
Attorney at Law
7911 Forsyth Blvd., Ste. 300
St. Louis, MO 63105
heastwood@eastwoodlawstl.com
Fax    314-863-5335
Voice  314-809-2343