UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

CRYSTAL RAY MILTON,                     )
                                        )
                Plaintiff,              )
                                        )
        v.                              )       No. 4:20-CV-3 RLW
                                        )
JON BELMAR, et al.,                     )
                                        )
                Defendants.             )

## MEMORANDUM AND ORDER

This matter is before the Court on Defendant John Wolf's Motion for Summary Judgment. Plaintiff filed a response opposing the motion, to which Defendant replied.   The motion is fully briefed and ripe for review.   For the following reasons, the Court grants Defendant Wolf's Motion for Summary Judgment.

## I. Background

This case arises from an encounter Plaintiff had with the police, during which a police dog bit her in the face and fractured her arm. Plaintiff initially brought suit in state court against Colonel Jon M. Belmar, then Chief of the St. Louis County Police, in his official capacity, and Officer John Wolf, in his individual capacity, pursuant to 42 U.S.C. §§ 1983 and 1988 for violations of the U.S. Constitution.   In her state court petition, Plaintiff alleged a Fourth Amendment violation of excessive force against Defendant Wolf (Count I), and a Monell violation for failure to adequately train against Defendant Belmar (Count II).

On January 2, 2020, Defendants removed the case to federal court on the basis of federal question jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1441. On September 2, 2020, Plaintiff

moved to voluntarily dismiss all claims against Defendant Belmar.   The only remaining claim in this suit is Count I, excessive force, against Defendant Wolf.

Defendant Wolf now moves for summary judgment on the basis of qualified immunity. Defendant Wolf argues that Plaintiff's apprehension by the police dog was reasonable under the totality of the circumstances at the time.   Plaintiff responds that there remain disputes of fact that preclude the entry of summary judgment.

## II.   *Summary Judgment Standard*

The standards applicable to summary judgment motions are well-settled. Pursuant to Federal Rule of Civil Procedure 56(a), a court may grant a motion for summary judgment if all of the information before the court shows "there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law."   See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The initial burden is placed on the moving party.   City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc., 838 F.2d 268, 273 (8th Cir. 1988) (the moving party has the burden of clearly establishing the non-existence of any genuine issue of fact that is material to a judgment in its favor). Once this burden is discharged, if the record shows that no genuine dispute exists, the burden then shifts to the non-moving party who must set forth affirmative evidence and specific facts showing there is a genuine dispute on a material factual issue.   Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

Once the burden shifts, the non-moving party may not rest on the allegations in his or her pleadings, but by affidavit and other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(c);   Herring v. Canada Life Assur. Co., 207 F.3d 1026, 1029 (8th Cir. 2000); Allen v. Entergy Corp., 181 F.3d 902, 904 (8th Cir. 1999). The non-

2

moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). A dispute about a material fact is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Herring, 207 F.3d at 1029 (quoting Anderson, 477 U.S. at 248). A party resisting summary judgment has the burden to designate the specific facts that create a triable question of fact, see Crossley v. Georgia-Pac. Corp., 355 F.3d 1112, 1114 (8th Cir. 2004), and "must substantiate allegations with sufficient probative evidence that would permit a finding in the plaintiff's favor." Davidson & Assocs. v. Jung, 422 F.3d 630, 638 (8th Cir. 2005).

### III.   Facts

After reviewing the record, and with the summary judgment standard in mind, the Court accepts the following facts as true for purposes of resolving Defendant Wolf's motion for summary judgment:

Around midnight on March 24, 2019, Plaintiff, who was homeless and unemployed at the time, attempted to break into a house located in south St. Louis County. (ECF No. 46 at 2-3). Attached to the house was a screened-in porch, which the parties refer to as the "three-seasons room." (Id. at 5). The three seasons-room was screened in on three sides and was attached to the back of the house. A door from the three-seasons room led to the kitchen. The three-seasons room could also be accessed by a door to a deck, which had a ramp from the ground. (Id. at 7).

Plaintiff used a pry bar on the kitchen door. She also removed a screen from a window leading into the house and tried to gain entry. After attempting to break in, Plaintiff crawled under a large, black grill cover and went to sleep in the three-seasons room. (Id. at 8-9). The grill cover was large enough to cover her completely. (Id.)

The house was vacant at the time of the break-in, but the homeowner had a remote security device in the house.    (ECF No. 46 at 3).    The homeowner reported to 911 and the police that she heard banging and voices in the house through her remote security device.

Defendant Wolf, Sergeant Aaron Meyer, and Officers Eric Tripp, Dillon Presson, and Jane Dumstorff were dispatched to the residence.    They understood from the 911 dispatcher that the house was vacant and a burglary was in process.    Defendant Wolf, Sgt. Meyer, and Officer Presson understood a burglary or attempted burglary was taking place by one or more persons. (Id. at 4-5).    It is undisputed that the crimes of burglary and attempted burglary are felonies in the state of Missouri.    (Id. at 4).

Sgt. Meyer, Officer Tripp, Defendant Wolf, and a canine, Kelso, started the search of the house outside the three-seasons room.    (Id. at 6).    Officer Presson held containment and a visual on the windows and back of the house.    (Id.)    It was dark outside, and Defendant Wolf and the other officers were concerned that someone could be lying in wait and would have an advantage over them. (Id.)

While they were on the deck, the officers looked into the three-seasons room.    Defendant Wolf, Officer Tripp, and Sgt. Meyer detected evidence that someone had tried to break into the house. (Id. at 6). A door jamb was pulled away with door debris, and a screen was propped up again the wall.[1]    There were also wet footprints.    The officers did not see Plaintiff.    Plaintiff

---

[1]It is also undisputed that there was a tool bag and a prybar which belonged to Plaintiff. The tool bag contained tools she used to break into the house, including a power drill, a vice grip, wire cutters, pliers, a crescent wrench, and an edged chisel. (ECF No. 46 at 7). Plaintiff disputes, however, that the officers saw the toolbox and tools when they looked into the three-seasons room. Plaintiff points to the fact that it was dark, and there was inconsistent evidence in the officers' testimony and the official police report regarding who was using their flashlights and at what point. Also, she points to the fact that Sgt. Meyer testified he could not see the tool bag.    (Id. at 8).    It is not unusual that there are minor inconsistencies in the testimony of multiple officers responding to a crime. Smith v. Kilgore, 926 F.3d 479, 484 (8th Cir. 2019) (disregarding immaterial

was in the three-seasons room asleep under the grill cover.    She was up against the wall closest to where the officers were standing on the deck. (Id. at 8).

The officers decided to search inside the house.    Defendant Wolf made the decision to deploy his canine, Kelso, to search the house for the following reasons: (1) there were likely multiple suspects committing a burglary, (2) the suspects were likely in the home, and (3) the inherent dangers and risks to officer safety of performing a close quarters search in the dark interior of a building.[2]    (Id. at 10). Defendant Wolf was also concerned that in searching the home, the burglary suspect or suspects would have a tactical advance over the officers. (Id. at 11).

Defendant Wolf, Officer Tripp, and Sgt. Meyer first searched the garage, which was attached to the house. (Id.) Before entering the house from the garage, Defendant Wolf gave a canine warning or announcement, which announced his and the dog's presence and ordered anyone in the house to surrender, or they would be bitten by the dog.    (Id. at 11).    Defendant Wolf waited ten to fifteen seconds after his warning to give anyone in the house a chance to surrender, but no one did. (Id.)    Defendant Wolf then commanded Kelso to search the first-floor rooms before the

---

discrepancies in officers' testimony); Smith v. City of Brooklyn Park, 757 F.3d 765, 773–74 (8th Cir. 2014) (alleged inconsistencies in officers' statements do not create genuine issue of material fact when multiple officer statements support the material fact that suspect was armed).    Contrary to plaintiff's assertion, minor inconsistencies, such as whether the officers saw the tool bag and evidence of forced entry before they entered the house, are immaterial.    The officers received notice from the 911 dispatcher and the homeowner that an unauthorized person or persons had broken into the house.    It was the officers' belief at the time that one or more persons were committing a burglary at the residence.

[2]Plaintiff disputes that there were likely multiple suspects and argues there is no evidence to support this fact.    As Defendant Wolf points out, the homeowner informed the 911 dispatcher and the police that there were voices in the home.    Based on this representation, it would be reasonable to conclude there was more than one suspect committing the burglary.    But in any event, the Court finds this purported dispute of fact is immaterial. It would have been reasonable for Defendant Wolf to conclude there was a risk to officer safety entering a dark home, even if the officers were searching for only one burglary suspect.

officers did.   While searching the house, Officer Tripp also gave orders for anyone there to surrender, and no one did.   (Id.)   Defendant Wolf next gave his standard set of canine warning and orders before Kelso searched the basement, followed by the officers' search of the basement. (Id. at 12).   No one surrendered in the basement.

The officers did not enter or physically search the three-seasons room when they arrived on the scene and before they searched the house.   From where the officers stood on the deck, there were areas in the three-seasons room that were obscured from view.   After searching the house, at least two of the officers, including Defendant Wolf, believed the three-seasons room needed to be physically searched.[3]   (Id. at 15-18).

Officer Tripp entered the three-seasons room from the kitchen door and saw the grill cover. He thought someone might be under the grill cover, which was about four feet from the kitchen door, and ordered "show me your hands."   (Id. at 14-15).   Plaintiff did not move or show herself. Plaintiff testified she was asleep the whole time, which Defendant does not dispute.   Defendant Wolf and the other officers believed a suspect was hiding and either resisting arrest or lying in wait and planning an attack.   (Id. at 15-16).   In the officers' experience, burglaries are very dangerous felonies that are often accompanied by violence. The officers were concerned that a felon might escape into the neighborhood and bring harm to its inhabitants. (Id. at 17-18).   The officers decided that the deployment of the canine in the three-seasons room was the most appropriate and safest of the less-lethal options.

---

[3]Plaintiff denies that the officers reached this conclusion following the search of the house, asserting "for at that point they believed the three-seasons room was empty."   (ECF No. 46 at 18). In disputing this fact, Plaintiff argues the officers had already searched the three-seasons room when they first arrived on the scene. As discussed in more detail below, Plaintiff fails to create a genuine dispute of material fact as to this issue, because her argument is based on speculation and conjecture and not on admissible evidence.

After Defendant Wolf gave his standard canine warning, Kelso was released and began his search of the three-seasons room.[4]  (Id. at 21).   Kelso sniffed the grill cover and bit Plaintiff's face.   Plaintiff admits she was sleeping until the time Kelso bit her.   She does not remember anything that happened after she fell asleep and before Kelso bit her.   (Id. at 21-22). Officer Presson saw a hammer near Plaintiff, and Sgt. Meyer saw a hammer and a knife, both of which were found on the scene and photographed.   (Id. at 26).

Plaintiff put both of her hands into and on Kelso's mouth.   (Id. at 24).   Kelso ripped the flesh of Plaintiff's jawline.   Officer Wolf did not immediately call off Kelso because Plaintiff was not secured. (Id. at 24-26). Officer Wolf gave Plaintiff multiple loud and clear commands to stop resisting.   Plaintiff continued to use her hands to get the dog off of her face and legs. She also kicked Kelso.   Plaintiff verbally denied she was resisting arrest, but she did not put her hands up or behind her back.   (Id. at 26). At one point, Plaintiff was so engaged with Kelso that Defendant Wolf believed the officers could take control of Plaintiff.   (Id. at 27).   Defendant Wolf grabbed and removed Kelso, while Officers Tripp and Dumstorff approached Plaintiff and handcuffed her. Kelso was removed before Plaintiff was handcuffed. Officers searched Plaintiff and found a box cutter and blades in her pocket.   (Id. at 28).   Officer Presson administered first aid to plaintiff, and Defendant Wolf called an ambulance and his supervisor. (Id. at 28).

## IV.   Discussion

The remaining claim in this case is a section 1983 claim of excessive force claim in violation of the Fourth Amendment against Defendant Wolf.   Plaintiff claims Defendant Wolf released Kelso without a canine warning, which was in violation of her Fourth Amendment rights.

---

[4]Plaintiff denies that Defendant Wolf gave a canine warning before Kelso was allowed to enter the three-seasons room.   As discussed in detail below, Plaintiff has set forth no admissible evidence to dispute this fact, and it remained undisputed.

Plaintiff alleges there were no exigent circumstances that would allow for the omission of the safeguard warning, allowing her the time to surrender unharmed. Defendant Wolf argues the undisputed evidence shows he gave a number of canine warnings, including before Kelso entered the three-seasons room where Plaintiff was hidden.   He moves for summary judgment on the basis of qualified immunity.

Defendants may be entitled to qualified immunity for those claims brought against them in their individual capacities.   McRaven v. Sanders, 577 F.3d 974, 980 (8th Cir. 2009).   "Qualified immunity protects a government official from liability in a section 1983 action unless the official's conduct violated a clearly established constitutional or statutory right of which a reasonable person would have known."   Henderson v. Munn, 439 F.3d 497, 501 (8th Cir. 2006) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).   "To overcome the defense of qualified immunity, a plaintiff must show: (1) the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional or statutory right; and (2) the right was clearly established at the time of the deprivation."   Howard v. Kansas City Police Dep't, 570 F.3d 984, 988 (8th Cir. 2009). The court may address either prong first.   Id. (citing Pearson v. Callahan, 555 U.S. 223, 236 (2009)).

"The Fourth Amendment protects citizens from being seized through excessive force by law enforcement officers." Mettler v. Whitledge, 165 F.3d 1197, 1202 (8th Cir. 1999).   Claims that law enforcement officers used excessive force are analyzed under Fourth Amendment's "reasonableness" standard. Graham v. Connor, 490 U.S. 386, 395 (1989) "To establish a constitutional violation under the Fourth Amendment's right to be free from excessive force, the test is whether the amount of force used was objectively reasonable under the particular circumstances." Coker v. Arkansas State Police, 734 F.3d 838, 842 (8th Cir. 2013).   Determining

whether the force used was objectively unreasonable and, therefore unconstitutional "'requires balancing of the individual's Fourth Amendment interests against the relevant government interests.'" Hosea v. City of St. Paul, 867 F.3d 949, 957 (8th Cir. 2017) (quoting Cnty. of Los Angeles, Calif. v. Mendez, 137 S. Ct. 1539, 1548 (2017)).

The reasonableness test under the Fourth Amendment is not suitable to rote application, and the United States Supreme Court has allowed for the fact "'that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.'" Plumhoff v. Rickard, 572 U.S. 765, 775 (2014) (quoting Graham, 490 U.S. at 397).   Courts analyzing excessive force claims under the Fourth Amendment are to assess the amount of force used "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Chambers v. Pennycook, 641 F.3d 898, 906 (8th Cir. 2011) (quoting Graham, 490 U.S. at 396). District courts have been instructed to pay "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Graham, 490 U.S. at 396; see also Malone v. Hinman, 847 F.3d 949, 952–53 (8th Cir. 2017).

Excessive force claims involving police dogs are governed by the objectively reasonable standard established in Graham.   Kuha v. City of Minnetonka, 365 F.3d 590, 596 (8th Cir. 2003), abrogated on other grounds by Szabla v. City of Brooklyn Park, Minn., 486 F.3d 385 (8th Cir. 2007).   The Eighth Circuit has recognized that police dogs can be an important tool for law enforcement, and the use of a police dog trained only in the "bite and hold" method is not objectively unreasonable.   Kuha, 365 F.3d at 600 ("the mere use of a police dog training to bite

9

and hold does not rise to the level of a constitutional violation.").    A constitutional violation may arise, however, based on the manner in which the police dog is employed. Szabla, 486 F.3d at 391. The Eighth Circuit has held that "a jury could properly find it objectively unreasonable to use a police dog trained in the bite and hold method without first giving the suspect a warning and opportunity for peaceful surrender."    Kuha, 365 F.3d at 598; Szabla, 486 F.3d at 392 (same, citing Kuha).

It is undisputed that Defendant Wolf gave canine warnings when first entering the house, when going downstairs to the basement, and before entering the three-seasons room where Plaintiff was sleeping before Kelso bit her.    Defendant Wolf, Sgt. Meyer, and Officers Tripp, Presson, and Dumstorff all testified that Defendant Wolf gave a canine warning before Kelso entered the three-seasons room and bit Plaintiff.    (Dep. of John Wolf at 132-33; Dep. of Eric Tripp at 27, ¶¶ 21-24; Dep. of Aaron Meyer at 43, ¶¶ 17-8; Dep. of Jane Dumstorff at 20, ¶¶ 19-23; Dep. of Dillon Presson at 24, ¶¶ 5-13).    Despite the testimony from the officers, Plaintiff maintains there is an issue of fact as to whether Defendant Wolf gave a canine warning before Kelso entered the three-seasons room.    She offers three arguments in support of her assertion, none of which the Court finds persuasive.

Plaintiff first argues that if Defendant Wolf had actually given the canine warning before Kelso entered the three-seasons room, she would have awakened.    Plaintiff offers no evidence in support of her argument, but merely offers the assertion as a fact.    In moving for summary judgment, Defendant Wolf met his initial burden by offering admissible evidence, including the sworn testimony from all the other officers who were present at the time, that he gave a canine warning before releasing Kelso into the three-seasons room.    Plaintiff now has the burden to respond "'by submitting evidentiary materials' of specific facts showing the presence of a genuine

10

issue for trial."   Bedford v. Doe, 880 F.3d 993, 997 (8th Cir. 2018) (quoting Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc)). Plaintiff fails to meet her burden as to this issue.   Her assertion that she would have awakened had Defendant given the canine warning is speculation, not evidence, which does not meet the summary judgment standard.   See id. ("The nonmoving party must do more than raise some metaphysical doubt about the material facts, … and cannot rest on mere denials or allegations.") (citing Gibson v. Am. Greetings Corp., 670 F.3d 844, 853 (8th Cir. 2012)); Young v. Builders Steel Co., 754 F.3d 573, 577 (8th Cir. 2014) ("'The non-moving party must substantiate his allegations by "sufficient probative evidence [that] would permit a finding in [his] favor on more than mere speculation, conjecture, or fantasy."') (alteration in original) (quoting Mann v. Yarnell, 497 F.3d 822, 825 (8th Cir. 2007)).

Plaintiff cannot offer testimony as to what happened while she was asleep. She can only testify as to her personal observations, which she cannot do if she was asleep at the time.   See Dennen v. City of Duluth, 350 F.3d 786, 792 (8th Cir. 2003) (plaintiff, who was bitten by a police dog and had no recollection of the event, could not directly contradict the testimony of the defendant officer).   See also Brown v. Diversified Distrib. Sys., LLC, 801 F.3d 901, 908–09 (8th Cir. 2015) (finding employees' lack of personal knowledge would prevent their testimony from establishing a triable issue of fact); Bosley v. Cargill Meat Sols. Corp., 705 F.3d 777, 782 (8th Cir. 2013) (finding a plaintiff's failure to recall an event is not the same as a denial supported by admissible evidence in the record); To v. U.S. Bancorp, 651 F.3d 888, 892 n.2 (8th Cir. 2011) ("An assertion that a party does not recall an event does not itself create a question of material fact about whether the event did, in fact, occur.").

The facts of the case at bar are nearly identical to a case from the Ninth Circuit, Lowry v. City of San Diego, 858 F.3d 1248 (9th Cir. 2017).   In Lowry, the plaintiff, who has been drinking,

unknowingly triggered a burglar alarm in the office building where she worked.   After setting off the alarm, she fell asleep on a couch in an office. She awoke to a police dog biting her lip.   Id. at 1254. The plaintiff in Lowry attempted to rebut the officer's testimony that a verbal canine warning was given based on the argument that had the warning been given, she would have awakened.   In granting summary judgment to the defendants, the district court concluded the plaintiff "lack[ed] proper foundation to testify to this fact because she was sleeping at the time the warning was given. She was not, as a result, in a position to know whether a warning had been given."   Id. at 1256. On appellate review, the Ninth Circuit affirmed the district court's ruling that there was not a genuine dispute as to whether a canine warning had been given, because "[the plaintiff] lacked personal knowledge of events that she did not in fact witness or was not in a position to perceive on the night in question."   Id.   The Court agrees with and follows this line of reasoning.   Plaintiff cannot rebut Defendant Wolf's evidence that a canine warning was given based on the argument that she would have awakened if it had been given.

Plaintiff's second argument in support of her assertion that an issue of fact exists as to whether Defendant Wolf gave a canine warning is based on timing.   Plaintiff argues there was not enough time for all the events to have happened as Defendant contends. Plaintiff points to the fact that it is undisputed Officer Tripp immediately yelled when he entered the three-seasons room from the kitchen, and she argues Sgt. Meyer's testimony creates a genuine dispute as to what happened next.   Plaintiff contends Sgt. Meyer, who was outside and near the front of the house, testified that he heard a commotion, which caused him to run to the back of the house and up the ramp to the three-seasons room. (Pl.'s Mem. Opp., ECF No. 49 at 12.)   Plaintiff asserts "pursuant to common sense and reasonable inference" that the moment when Sgt. Meyer began to run was when Officer Tripp yelled upon entering the three-seasons room. (Id.) Plaintiff estimates Sgt.

Meyer "likely took no more than 15 seconds" to get from near the front of the house to the three-seasons room.  (Id.)   Plaintiff bases her calculation on a "common-sense" estimate of the time it would take to run 80 feet, and the amount of time Officer Presson testified it took her to run to the back of the house.  (Id.)   Plaintiff states it is undisputed that when Sgt. Meyer arrived at the three-seasons room, Kelso was already biting Plaintiff's arm, and according to Plaintiff, "[i]t is reasonable to infer" that fifteen seconds is not a long enough time period for all the events described by Defendant to have occurred, including the canine warning.  (Id. at 13).   Plaintiff concludes, "Thus, due to the time discrepancy, [Defendant] Wolf's version of what occurred after the kitchen door opened has not been established to be beyond genuine dispute."  (Id.)

Plaintiff's timing argument is flawed, however, because the underlying assumption upon which Plaintiff's timeline argument is based – that Sgt. Meyer began to run when he first heard Officer Tripp yell – is not supported by the evidence in the record.   At Sgt. Meyer's deposition the following exchange took place between Sgt. Meyer and Plaintiff's counsel:

> Plaintiff's Counsel:   Where were you when [Plaintiff] was bit [sic] by the dog?
>
> Sgt. Meyer:   I was outside the residence when I heard the commotion, came back up to the three-seasons room, and the dog was apprehending her at that time.
>
> . . .
>
> Plaintiff's Counsel:   And what exactly did you hear?
>
> Sgt. Meyer:   I heard yelling, then I heard Officer Wolf begin his canine announcement.
>
> Plaintiff's Counsel:   And when you heard that, what did you do?
>
> Sgt. Meyer:   I started to make it towards the three-seasons room.

(ECF No. 37, Aaron Meyer's Deposition at 42-43)

Sgt. Meyer did not begin running when he heard Officer Tripp yell upon entering the three-seasons room from the kitchen.   Sgt. Meyer testified that he began to run toward the back of the house <u>when he heard Defendant Wolf's canine warning</u>.   Sgt. Meyer's testimony does not refute Defendant Wolf's version of the facts; it supports it.

Further, Plaintiff's timing argument is based entirely on speculation. Plaintiff has no evidence as to the amount of time it took Sgt. Meyer to get to the three-seasons room.   She has no idea how fast he was moving, whether he took a direct route, the condition of the pathway, or if there were any obstacles. Plaintiff's estimate that it only took Sgt. Meyer fifteen seconds to get from the front of the house up to the three-seasons room is based on assumptions and speculation, none of which is admissible evidence.   In opposing summary judgment, Plaintiff "must do more than raise some metaphysical doubt about the material facts."   <u>Gibson</u>, 670 F.3d at 853.   <u>See also</u> <u>Clay v. Credit Bureau Enterprises, Inc.</u>, 754 F.3d 535, 539 (8th Cir. 2014) (to survive summary judgment motion, non-moving party must substantiate allegations with sufficient probative evidence that would permit finding in his favor based on more than speculation or conjecture); <u>Reed v. City of St. Charles, Mo.</u>, 561 F.3d 788, 791 (8th Cir. 2009) (district court is not required to accept unreasonable inferences or sheer speculation as fact).   Plaintiff's timing argument is pegged to an incorrect factual premise, and is speculative and based on conjecture. There is no genuine issue of material fact as to the timing of the events before Kelso bit Plaintiff.

Plaintiff's final argument that an issue of fact exists as to whether Defendant Wolf gave a canine warning is based on her theory that the officers had thoroughly searched the three-seasons room when they first arrived at the house and, therefore, Defendant Wolf would have had no reason to give the warning.   There is no evidence, however, that any of the officers entered and searched the three-seasons room before they searched the house.   It is undisputed that when the officers

14

first arrived at the scene, at least some of the officers looked into the unlit three-seasons room through the screens while standing on the deck, but no one entered the three-seasons room and did a physical search.   Plaintiff attempts to create issues of fact as to what the officers did or did not see while they were standing on the deck and based on the conditions of the light at the time. While there are minor inconsistencies in the record regarding the lighting and what the officers saw, it is undisputed that no one entered the three-seasons room or spotted Plaintiff lying under the grill cover before they commenced the search of the house.

After searching the interior of the house with Kelso, the only areas of the house the officers had not physically searched were the attic and the three-seasons room.   At least two of the officers, including Defendant Wolf, believed the three-seasons room needed to be physically searched, and when Officer Tripp entered the three seasons-room from the kitchen and saw the shape under the grill cover, Defendant Wolf and the other officers made the decision to search the room with Kelso. Defendant Wolf submitted undisputed evidence that he gave a canine warning, waited, and then released Kelso into the three-seasons room.   Plaintiff's theory that a canine warning would not have been given because the search was over is not based on admissible evidence, but rather on mere speculation that is contrary to the objective evidence in the record. See Lowry, 858 F.3d at 1256 (rejecting the plaintiff's assertions regarding lighting and whether a door was ajar because they were based on speculation, not admissible evidence).

Plaintiff's effort to avoid summary judgment based on a theory supported by speculation, not hard evidence, is similar other cases where the Eighth Circuit has found the entry of summary judgment appropriate.   See, e.g., Wendt v. Iowa, 971 F.3d 816, 822 (8th Cir. 2020) (affirming summary judgment for defendant officers where plaintiffs' theory of the case, that the defendants had placed a GPS tracker on a vehicle, "[was], at best, speculative and contradicts all objective

evidence in the record"); Lacey v. Norac, Inc., 932 F.3d 657, 660 (8th Cir. 2019) (rejecting argument that because documents were not dated they were likely created in anticipation of litigation, thereby rendering them pretextual, as "based entirely on speculation."); Williams v. Wells Fargo Bank, N.A., 901 F.3d 1036, 1039–40 (8th Cir. 2018) ("mere allegations, unsupported by specific facts or evidence beyond the nonmoving party's own conclusions, are insufficient to withstand a motion for summary judgment.") (quoted case omitted).

Even if the Court were to accept Plaintiff's theory that the search was over and the officers believed no one was in the three-seasons room when they entered with Kelso, Defendant Wolf would still be entitled to summary judgment on the basis of qualified immunity.   Plaintiff has pointed to no case law demonstrating it was clearly established at the time that a canine warning must be given before entering a room that has been previously searched and cleared.   In order to be "clearly established," the law must be "sufficiently clear that every reasonable official would understand what he is doing is unlawful." District of Columbia v. Wesby, 138 S. Ct. 577, 589 (2018) (citation omitted).   Clearly established law is "dictated by controlling authority or a robust consensus of cases of persuasive authority." Id. at 589–90 (internal quotation marks and citation omitted). "[P]recedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply." Id. at 590.

The two cases on which Plaintiff relies, Collins v. Schmidt, 326 F. Supp. 3d 733 (D. Minn. 2018) and Kruse v. Jackson, 2006 WL 3758204, at *5 (D. Minn. Dec. 20, 2006), are district court cases that are readily distinguishable from the facts at hand.   In Collins, a bystander was bitten by a police dog that was on a 20-foot leash while the defendant officer was actively searching an alley. The district court found the officer did not have proper control of the dog and failed to give an adequate canine warning.   Id. at 741. In Kruse, the defendant officer was chasing a suspect

16

who was fleeing on foot when the officer released a police dog, possibly without warning. 2006 WL 3758204, at *5.   The district court denied summary judgment because there was an issue of fact as to whether the defendant gave a canine warning.   Setting aside that two district court cases cannot constitute controlling authority, the cases do not stand for the proposition that an officer handling a police dog must give a canine warning before entering an enclosed room or porch that he already searched and believed was empty, which is Plaintiff's theory of what happened.   Such a right was not clearly established at the time Kelso bit Plaintiff.   See Howard, 570 F.3d at 988.

Once the moving party satisfies his initial burden, as Defendant Wolf has done here, the nonmoving party "must respond by submitting evidentiary materials" of specific facts showing the presence of a genuine issue for trial. Torgerson, 643 F.3d at 1042.   Plaintiff has offered no direct evidence to rebut Defendant's version of the events.   She has failed to show there remains a genuine dispute of material fact such that a factfinder could reasonably determine the issue in her favor.   Zayed v. Associated Bank, N.A., 913 F.3d 709, 714 (8th Cir. 2019).   It remains undisputed that Defendant Wolf, who was responding to a burglary call, gave a canine warning before he released Kelso into the three-seasons room.

## V.   Conclusion

In sum, the Court finds Defendant Wolf is entitled to summary judgment because there was no Fourth Amendment excessive force violation. It is undisputed that Defendant Wolf was investigating a burglary, which is an inherently dangerous crime.   Defendant Wolf was concerned about officer safety, as well as the safety of the community.   Before Kelso entered the three-seasons room, Defendant Wolf gave a canine warning, waited a few moments, and then released Kelso.   As Officer Wolf was responding to a dangerous situation, and he gave a canine warning which allowed Plaintiff an opportunity to surrender, there was no Fourth Amendment excessive

17

force violation.   <u>Kuha</u>, 365 F.3d at 598; <u>Szabla</u>, 486 F.3d at 392.   Because there was no constitutional violation, Defendant Wolf has qualified immunity and is entitled to summary judgment as a matter of law.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant John Wolf's Motion for Summary Judgment (ECF No. 35) is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Stay the Case or Modify the Case Management Order (ECF No. 59) is **DENIED as moot**.

An appropriate judgment shall accompany this Memorandum and Order.


**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**


Dated this  23rd  day of December, 2021.

18